## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLEVELAND LAWSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-16909** |
| **DARRYL VANNOY, WARDEN** | **SECTION "R" (4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I. Factual and Procedural Background

The petitioner, Cleveland Lawson ("Lawson"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On March 17, 2005, Lawson was indicted by a Grand Jury in Jefferson Parish for the second-degree murder of his former girlfriend, Jamika Davalie.[3] Lawson entered a plea of not guilty to the charge on March 18, 2005.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 9, Indictment, 3/17/05; Grand Jury Return, 3/17/05.

[4]St. Rec. Vol. 1 of 9, Minute Entry, 3/18/05.

The record reflects that, on February 5, 2005, Lawson and his roommate, Kevin Curley, went to a gun store to pick up a gun, which Lawson had previously purchased.[5] When they returned to their apartment in Metairie, they loaded the gun, and Curley showed Lawson how to shoot it. The gun did not work properly, so they decided to put it away and return it at another time. Curley wanted to put the gun on a shelf in the back room of the apartment, but Lawson wanted to leave the gun on top of the entertainment center in the living room.

Sometime afterward, Jonathan Green drove Jamika Davalie, who was Lawson's ex-girlfriend, to the apartment to retrieve her mail. Green waited in his car, and Davalie entered the apartment using her key. She told Lawson that she had come to get her "stuff," and Lawson, who was lying on the sofa, got up to get it for her. He walked to the back bedroom of the apartment, and Davalie followed him, saying that she would get it herself. After a minute or two, Curley heard a loud noise. Lawson walked out of the bedroom holding the gun, and said he had shot Davalie. Curley advised Lawson to leave, even though Lawson said the shooting was an accident. Lawson put the gun in his duffel bag, and the two men left the apartment and caught a bus.

When Davalie did not return to the car, Green called her cell phone several times and got no answer. Green became concerned and called the police who met him at the apartment. When no one answered his knock, Deputy Gerard Patterson entered through the unlocked door and announced his presence, but there was still no answer. When he looked around, he found Davalie lying on the bedroom floor with a gunshot wound to the head.

---

[5]The facts are taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Lawson*, 1 So.3d 516, 520-22 (La. App. 5th Cir. 2008); St. Rec. Vol. 1 of 9, 5th Cir. Opinion, 08-KA-123, 11/12/08.

In the meantime, Curley and Lawson got off of the bus, and Lawson called his sister and his cousin. They met Curley and Lawson and convinced Lawson to turn himself in to police. Lawson's sister and cousin drove both men back to the apartment, where the police were still investigating. When Lawson exited the vehicle, he gave the duffel bag containing the gun to Deputy Scott Guillory. The deputy transported Lawson to the criminal investigations bureau where Detective David Morales took his statement.

Lawson told the officer that he went into the room to get Davalie's mail and, when he turned around, Davalie had the gun pointed at him. He claimed that he took the gun out of her hand and as he was pulling back, it accidentally went off. Lawson explained that he was four feet away from Davalie when the gun discharged. However, Dr. Fraser Mackenzie, the coroner and an expert forensic pathologist, testified that he conducted the autopsy of Davalie and determined the gun was placed directly against Davalie's head went it discharged, and that there was no possibility that the gun was four feet away when the shot was fired. Other evidence established that the gun was in working order and could not have accidently gone off.

After being found competent to proceed, Lawson was tried before a jury on May 22 through 24, 2007, and found guilty as charged of second degree murder.[6] At a hearing held on June 21, 2007, the Trial Court denied Lawson's motion for a new trial and post-verdict judgment of acquittal.[7] After waiver of legal delays, the Trial Court sentenced Lawson to life in prison without

---

[6]St. Rec. Vol. 1 of 9, Trial Minutes, 5/22/07; Trial Minutes, 5/23/07; Trial Minutes, 5/24/07; Jury Verdict, 5/24/07; Minute Entry, 8/17/05; Motion to Determine Competency, 6/13/05; Hearing Transcript, 8/17/05; St. Rec. Vol. 3 of 9, Trial Transcript, 5/23/09; St. Rec. Vol. 4 of 9, Trial Transcript, 5/24/09.

[7]St. Rec. Vol. 1 of 9, Sentencing Minutes, 6/21/07; Motion for New Trial and for Post-Verdict Judgment of Acquittal, 6/21/07; St. Rec. Vol. 4 of 9, Sentencing Transcript, 6/21/07.

benefit of parole, probation, or suspension of sentence.[8] The Court also denied his motion to reconsider the sentence.[9]

On direct appeal to the Louisiana Fifth Circuit, Lawson's appointed counsel raised the following errors:[10] (1) the Trial Court erred by denying the motion in limine to exclude other crimes evidence; (2) the Trial Court erred by failing to give a jury instruction on justifiable homicide; and (3) the evidence was insufficient to support the jury's verdict.

The Court affirmed the conviction and sentence on November 12, 2008, finding no merit in the claims asserted.[11] Under federal law, his conviction became final thirty (30) days later, on December 12, 2008, when he did not seek review of in the Louisiana Supreme Court. *See Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

Almost one year later, on November 18, 2009, Lawson submitted a writ application to the Louisiana Fifth Circuit seeking post-conviction relief on grounds of ineffective assistance of counsel and denial of his confrontation rights.[12] On January 7, 2010, the Court granted the writ

---

[8]St. Rec. Vol. 1 of 9, Sentencing Minutes, 6/21/07; St. Rec. Vol. 4 of 9, Sentencing Transcript, 6/21/07.

[9]St. Rec. Vol. 1 of 9, Sentencing Minutes, 6/21/07; Motion to Reconsider Sentence, 6/21/07; St. Rec. Vol. 4 of 9, Sentencing Transcript, 6/21/07.

[10]St. Rec. Vol. 4 of 9, Appeal Brief, 08-KA-0123, 3/10/08. Lawson was granted leave to file a pro se supplement brief, but he did not. St. Rec. Vol. 4 of 9, Motion for Leave, 08-KA-0123, 3/28/08; 1st Cir. Order, 08-KA-0123, 3/31/08.

[11]*Lawson*, 1 So.3d at 516; St. Rec. Vol. 9 of 9, 5th Cir. Opinion, 08-KA-123, 11/12/08.

[12]St. Rec. Vol. 9 of 9, 1st Cir. Writ Application, 09-KH-1019, 12/2/09 (dated 11/18/09).

solely for the purpose of transferring the writ application to the state trial court for consideration as an application for post-conviction relief.[13]

After receiving a response from the State, the Trial Court denied relief on March 26, 2010, finding no merit in the ineffective assistance claim and the confrontation rights claim to be procedurally barred, citing La. Code Crim. Proc. art. 930.4(B)&(C).[14]

The Louisiana Fifth Circuit denied Lawson's related writ application on June 10, 2010, finding no error in the Trial Court's ruling.[15] The Louisiana Supreme Court denied Lawson's related writ without stated reasons on August 19, 2011.[16]

Almost four years later, on June 26, 2015, Lawson submitted a second application for post-conviction relief to the state trial court, asserting that he was denied effective assistance of counsel at trial.[17] On July 15, 2015, the Trial Court declined to consider the application, finding it to be untimely under La. Code Crim. Proc. art. 930.8, and successive under La. Code Crim. Proc. art. 930.4(B), (C), (D) & (E).[18]

---

[13] St. Rec. Vol. 9 of 9, 1st Cir. Order, 09-KH-1019, 1/7/10.

[14] St. Rec. Vol. 5 of 9, Trial Court Order, 3/26/10; Trial Court Order, 1/15/10; State's Response, 2/17/10.

[15] St. Rec. Vol. 7 of 9, 5th Cir. Order, 10-KH-447, 6/22/10; St. Rec. Vol. 7 of 9, 5th Cir. Writ Application, 10-KH-447, 5/27/10 (not dated, postmarked 5/20/10). Lawson had 30 days, or until Monday, April 26, 2010, to timely file a writ application with the appellate court. La. App. Rule 4-3. The Trial Court, however, granted him until May 17, 2010 to file a writ application. St. Rec. Vol. 6 of 9, Trial Court Order, 4/30/10; Notice of Intent, 4/23/10 (dated 4/13/10). Lawson failed to meet either deadline based on the dates appearing in the record. However, the court does not have enough information to properly apply the mailbox rule to that pleading. Nevertheless, the State has not raised the issue and it need not be conclusively determined since it does not affect the Court's final ruling on the timeliness of Lawson's petition. Affording him every benefit, the Court will consider the application to have been timely filed.

[16] *State ex rel. Lawson v. State*, 67 So.3d 1243 (La. 2011); St. Rec. Vol. 8 of 9, La. S. Ct. Order, 2010-KH-1717, 8/19/11; La. S. Ct. Writ Application, 10-KH-1717, 7/22/10 (dated 7/12/10); La. S. Ct. Letter, 2010-KH-1717, 7/22/10.

[17] St. Rec. Vol. 6 of 9, Application for Post-Conviction Relief, 7/9/15 (dated 6/26/15).

[18] St. Rec. Vol. 6 of 9, Trial Court Order, 7/15/15.

The Louisiana Fifth Circuit denied Lawson's related writ application on September 1, 2015, finding no error in the Trial Court's ruling.[19] On October 28, 2016, the Louisiana Supreme Court denied Lawson's subsequent writ application, finding that his application for post-conviction relief was not timely filed under La. Code Crim. Proc. art. 930.8.[20]

## II.  Federal Habeas Petition

On December 2, 2016, the clerk of this Court filed Lawson's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[21] (1) he was denied effective assistance of counsel at trial; and (2) the state courts improperly applied state law procedural bars to deny him post-conviction review of his claims.

The State filed a response in opposition to Lawson's petition, asserting that the petition was not timely filed under federal law.[22] Lawson replied to the State's opposition, urging the Court to excuse the state imposed procedural bars to review of the merits of his claims.[23]

## III.  General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[24] applies to this petition, which is deemed filed in this Court under the federal

---

[19]St. Rec. Vol. 7 of 9, 5th Cir. Order, 15-KH-531, 9/1/15; 5th Cir. Writ Application, 15-KH-531, 8/28/15 (not dated, postmarked 8/24/15).

[20]*State ex rel. Lawson v. State*, 203 So.3d 1028 (La. 2016); St. Rec. Vol. 8 of 9, La. S. Ct. Order, 2015-KH-1830, 10/28/16; La. S. Ct. Writ Application, 15-KH-1830, 10/7/15 (dated 9/29/15); La. S. Ct. Letter, 2015-KH-1830, 10/7/15.

[21]Rec. Doc. No. 1.

[22]Rec. Doc. No. 11

[23]Rec. Doc. No. 12

[24]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify

mailbox rule on December 2, 2016.[25] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State contends, and the record confirms, that Lawson's federal habeas petition was not timely filed under the AEDPA. His petition should be dismissed as time-barred.

## IV.     Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[26] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). As stated above,

---

an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of this Court docketed Lawson's petition on December 2, 2016, and the case later was opened January 9, 2017, when Lawson paid the filing fee following denial of pauper status. According to the official stamp of the prison, Lawson delivered his pleadings to prison officials on December 2, 2016, for electronic mailing to this Court, which was done that same day. Rec. Doc. No. 1, p. 1. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

[26]The statute of limitations provision of the AEDPA provides for other triggers, which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

Lawson's conviction was final under federal law on December 12, 2008. Pursuant to § 2244, Lawson had one year from that date, or until Monday, December 14, 2009,[27] to timely file a federal application for habeas corpus relief, which he did not do. Thus, literal application of the statute would bar Lawson's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

### A. <u>Statutory Tolling</u>

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

---

D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

[27]The final day was Saturday, December 12, 2009, which extended the last day of the period to Monday, December 14, 2009. Fed. R. Civ. P. 6(a)(1)(C).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. 214 (finding that a motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In the instant case, the AEDPA filing period began to run on December 13, 2008, the day after Lawson's conviction and sentence were final under federal law. The one-year AEDPA filing period continued to run from that date for 340 days, until November 18, 2009, when Lawson submitted a writ application to the Louisiana Fifth Circuit seeking post-conviction relief. The State is no doubt correct in its argument that normally, the filing of a pleading in the wrong court does <u>not</u> interrupt the AEDPA one-year filing period since the document is not properly filed. *Artuz v. Bennett*, 531 U.S. 4, 9 (2000) (If "an application is erroneously accepted by the clerk of a

court lacking jurisdiction . . . it will be pending, but not properly filed."); *Larry v. Dretke*, 361 F.3d 890, 894-95 (5th Cir. 2004) (state application was not "properly filed" for tolling purposes because under Texas procedural law the TCCA did not have jurisdiction to consider the application until the judgment was final). However, in this case, the Louisiana Fifth Circuit did not reject the pleading as improperly filed or for lack of jurisdiction. Instead, the Court simply transferred the application to the Trial Court for consideration. The State has cited no federal authority, and the Court can find none, to show that, under these circumstances, the application was not deemed properly filed for purposes of statutory tolling under the AEDPA. Moreover, none of the Louisiana courts rejected the application on the grounds of jurisdiction or on any procedural filing deficiency. For these reasons, the Court finds that Lawson's first application should be considered to have provided him statutorily tolling of the one-year limitations period. Furthermore, under the circumstances of this case, the manner in which his application was treated by the state courts at least warrants tolling under the equitable standards discussed later in this opinion.

Thus, Lawson's first application for post-conviction relief remained pending from its submission on November 18, 2009, until August 19, 2011, when the Louisiana Supreme Court denied his related writ application. The AEDPA one-year filing period began to run the next day, August 20, 2011, and did so for the remaining twenty-five days, until Tuesday, September 13, 2011, when it expired. Lawson had no properly filed state post-conviction or other collateral review pending in any state court during that time period. Moreover, the record further demonstrates that Lawson allowed an additional three years and almost ten months to pass without interruption before he filed for additional state court review on June 26, 2015.

Lawson did not file his federal petition until December 2, 2016, which was over five years and almost three months after the AEDPA filing period expired on September 13, 2011. Thus, Lawson's federal petition was not timely filed.

### B. No Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). In other words, equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

For example, equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and failing to communicate with the client over a period of years, in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate

11

was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *but see Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus, rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint inmate's preferred habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Lawson has not presented, nor does the record demonstrate, other than that discussed above, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation. The record, instead, reflects simply that the petitioner did not timely pursue federal habeas relief. There is no basis for equitable tolling in this case.

Thus, Lawson's federal petition filed on December 2, 2016, which was five years and almost three months after the AEDPA filing period that expired on September 7, 2011, was not timely filed in this Court and must be dismissed for that reason.[28]

---

[28]Lawson also cannot excuse his untimely petition based on his claims of ineffective assistance of trial counsel. The United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911 (2013), do not provide a basis for review of this untimely filed federal petition or his ineffective assistance of trial counsel claim. In *Martinez*, the Court held that a state court imposed "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Martinez*, 566 U.S. at 17 (emphasis added). The bar to review at issue in this case arises from petitioner's failure to meet the federal limitations deadline under the AEDPA. The *Martinez* and *Trevino* decisions do not address or provide an excuse for the untimely filing of a federal habeas petition. *See*, *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun.13, 2014) (Order adopting Report). These cases also do not constitute new rules of constitutional law made retroactive on collateral review that would start a new one-year filing period under the AEDPA. *See*, *In re Paredes*, 587 F. App'x 805, 813 (5th Cir. 2014) (". .

## V. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Cleveland Lawson's petition for the issuance of a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[29]

New Orleans, Louisiana, this 23rd day of August, 2017.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

. the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012). For these reasons, neither *Martinez* nor *Trevino* provide this petitioner a basis for relief from the failure to meet the AEDPA's limitations period.

[29]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.